Zimmerman, J.
In its material parts, the agreed statement of facts, covering all times involved in this controversy, is as follows:
1. Snyder was a member of the Pleasant View Volunteer Fire Department, which department was legally organized and existing.
2. A valid reciprocal contract existed between the Plain Township trustees and the city of Canton, providing in essence that the fire departments of Plain Township and the city of Canton would assist each other in emergencies.
3. A valid contract existed between the Pleasant View Fire Department and Plain Township whereby the fire department would respond to all fire calls within the territory affected by the contract and in addition would respond to emergency calls *71 wherein the use of an ambulance or other emergency vehicle was necessary,
4. There was a valid ordinance of the city of Canton, creating a stop-sign control system at the intersection of Maple Avenue and 19th Street, N. E., in that municipality.
5. On the morning of December 2, 1955, Snyder was on Maple Avenue in Canton and received a telephone call to bring an ambulance to the scene of an accident, the ambulance being located at the fire department station in Plain Township.
6. The shortest and best manner of reaching the ambulance was over Maple Avenue.
7. Upon receiving the call, Snyder went immediately to his automobile, properly identified as an emergency vehicle in accordance with the applicable statute.
8. Snyder proceeded north on Maple Avenue to its intersection with 19th Street and deliberately ignored the traffic control sign there, but drove his vehicle with due regard for the safety of persons and property.
9. Snyder was arrested for ignoring the sign.
10. When Snyder entered the street intersection, the red blinker lights on his automobile were operating and the siren thereon was being sounded in compliance with statutory requirements.
Section 4511.01 (D), Revised Code (Recodification Act of 1953), read:
“ ‘Emergency vehicle’ means fire department, police and state highway patrol vehicles, vehicles of salvage corporations organized under Sections 1709.01 to 1709.07, inclusive, of the Revised Code, emergency vehicles of municipal or county departments or public utility corporations when identified as such as required by law, the Director of Highways, or local authorities, motor vehicles when commandeered by a police officer, ambulances, and motor vehicles ivhen used by volunteer fireman responding to emergency calls in the fire department service, when identified as required by the director.” (Emphasis added.)
Section 4511.03, Revised Code, provides:
“The driver of any emergency vehicle, when responding *72 to an emergency call, upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety to traffic, but may proceed cautiously past such red or stop sign or signal with due regard for the safety of all persons using the street or highway.”
Taking into consideration all the recitals in the agreed statement of facts, in connection with the quoted sections of the Revised Code, we are in agreement with the majority of the Court of Appeals that a volunteer fireman traveling to his fire department station or other place of assembly in answer to a fire call or in response to a summons for emergency fire department service is entitled to the same protection as when he is leaving such assembly point and is in the process of going directly to the scene of a fire or to some other place where an emergency exists. In such instances, speed with caution is essential in the overall undertaking, and we think the General Assembly had this in mind in enacting the quoted legislation.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Stewart, Taft, Matthias, Bell and Herbert, JJ., concur.